There is one point in this case that I wish the plaintiff's counsel to attend to particularly, which is this: If Pinkham Eaton's heirs are satisfied as to the proceedings in obtaining the judgment at law, and selling the land, can strangers take advantage of any errors in those proceedings, or complain of them in a collateral way?
Mr. CAMPBELL concluded by observing that they had the oldest grant, which gave them a clear legal right, and, to take away that, the Court should see that there was a regular chain of title.
OVERTON, for the defendants, observed, that, as the Court would have the matter under consideration, he wished leave to state, as to the construction of statutes, that the difference between an explanatory statute, alluded to by one of the Court, seemed to consist in this. An explanatory statute should never be extended, nor narrowed by an equitable construction, where the words were plain, because this would be an explanation upon an explanation; but if doubtful, as was manifestly the case in the Act of 1797, the same rule must be applied as in other cases, to find out the intention of the legislature. What did the legislature mean to do in passing the fourth section of the Act of 1797? The answer is in the preamble, to remove doubt, as to the Act of 1715. What was that doubt? We all know it was whether a naked possession, without deed of ungranted land, would *Page 475 
produce a bar or not. To carry the act any further, new principles will be introduced, and, as to the intention of the legislature in introducing them, whether any, and to what extent, must be ascertained by the principles of sound construction, in the same manner as in any other case; there may be different rules in construing the same statute, as where its provisions are penal and also remedial,[1] so here if it be doubtful, whether the enacting words go further than the preamble which is to explain if the act be considered as explanatory, it must receive such a construction as will confine it strictly to the removal of doubts; if attempted to be explained any further it will be subject to such rules as will enable judges to ascertain whether the legislature designed to introduce a new law, instead of explaining an old one; and ha took it to be a clear principle that the Court would not construe such an act as introductive of a new law, unless the words used by the legislature could not admit of any other construction.[1] All the rules respecting the construction of statutes amount to nothing when the intention of the legislature is plainly expressed; they vanish, they are never thought of. In doubtful cases, the intention is what is sought after, and the rules of construction, which are nothing but the dictates of common sense, apply in one case as well as in another, according to the subject-matter.[2]
[1] 2 Bl. 1226.
[1] 11 Mod. 150; 6 Wils. ed. Bac. Ab. 384.
[2] In 2 Bos. Pull. 24, Lord Eldon observes, "that when a general principle for the construction of an instrument is once laid down, the Court will not be restrained from making their own application of that principle, because there are cases in which it may have been applied in a different manner; the principle being once acknowledged the only difficulty consists in making the most accurate application of it." See 2 Cr. 386, 399, 4 Term Rep. 793; Willis, 395; 1 Mass. 150, 151; 2 Cr. 400; 2 Cr. 23, 24, 52, 341; 1 Burr. 447; 3 Mass. 6, 21, 22; Wil. ed. Bac. Ab. 383.